1

2

3

4

5

6

7

8            UNITED STATES  DISTRICT COURT

9              Northern District of California

10                 Oakland Division

11   THE BOARD OF TRUSTEES, in their              No. C 10-05831 LB
     capacities as Trustees of the CEMENT
12   MASONS HEALTH AND WELFARE             **REPORT AND RECOMMENDATION**
     TRUST FUND FOR NORTHERN               **RECOMMENDING GRANTING**
13   CALIFORNIA, CEMENT MASONS             **PLAINTIFFS' MOTION FOR**
     PENSION TRUST FUND FOR NORTHERN       **DEFAULT JUDGMENT**
14   CALIFORNIA, CEMENT MASONS
     VACATION/HOLIDAY TRUST FUND FOR       **[ECF No. 11]**
15   NORTHERN CALIFORNIA, CEMENT
     MASONS APPRENTICESHIP AND
16   TRAINING TRUST FUND FOR
     NORTHERN CALIFORNIA,
17
                    Plaintiffs,
18        v.

19   KMA CONCRETE CONSTRUCTION Co., a
     California Corporation,
20
                    Defendant.
21   _____/

22                  **I.  INTRODUCTION**

23       The court recommends granting default judgment in favor of Plaintiffs – the collective

24   bargaining representative and trustees of employee benefits plans for employees working as cement

25   masons – who sued Defendant KMA Concrete Construction Company for failing to make timely

26   payments and monthly reports in violation of the parties' bargaining agreement and the Employee

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Retirement Income Security Act (ERISA).  *See* Complaint, ECF No. 1 at 4-6, ¶¶ 7-21.[1]   Following a

2   hearing on August 11, 2011, this court finds that (A) Plaintiffs established personal and subject

3   matter jurisdiction, and (B) the factors in *Eitel v. McCool* favor entry of default judgment.  The court

4   recommends (A) entry of default judgment of $80,014.42 in delinquent contributions, $4,350.00 in

5   liquidated damages (equal to a $150 flat fee for each month of delinquent payments), $25,954.78 in

6   interest (1.5% interest per month on outstanding balances), $816.25 in costs, and $9,478.75 in

7   attorney's fees, and (B) an order requiring KMA Concrete to submit to an audit with Plaintiffs'

8   representatives so that Plaintiffs may calculate unpaid contributions and liquidated damages that

9   KMA Concrete has not yet paid.

## II.  FACTS

### A.  Notice to KMA Concrete

Plaintiffs filed the complaint on December 22, 2010.  Complaint, ECF No. 1.  They served KMA
Concrete on January 13, 2011.  Proof of Service, ECF No. 4.  After KMA Concrete did not file a
responsive pleading or otherwise appear in the case, Plaintiffs requested entry of default on February
4, 2011, and served KMA Concrete with the request on the same day.  Request for Entry of Default,
ECF No. 6.  The Clerk of the Court entered default on February 7, 2011.  Entry of Default, ECF No.
7.  Plaintiffs then filed a motion for default judgment on April 6, 2011, and served KMA Concrete
that day.  Motion for Default Judgment, ECF No. 8.  The court denied Plaintiffs' motion without
prejudice on May 27, 2011 because Plaintiffs failed to substantiate their numbers and sought
contributions for months not covered in the complaint.  5/27/11 Order, ECF No. 10.  Plaintiffs
renewed their motion for default judgment on June 30, 2011 and served KMA Concrete with a copy
of the motion that same day.  Motion, ECF No. 11.

### B.  Parties and Terms of Collective Bargaining Agreement and Trusts

Plaintiffs are the administrators and trustees for the trust funds.  Complaint, ECF No. 1 at 2, ¶ 2.
These trust funds are organized pursuant to the Labor Management and Relations Act of 1947

---

[1]  Court filings are identified by their docket number and page on the Electronic Case Filing
("ECF") docket sheet.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   (LMRA), and the trustees are fiduciaries of multiemployer benefit plans within the meaning of

2   ERISA.  *Id.*; 29 U.S.C. § 185; 29 U.S.C. §§ 1002, 1132(d).  KMA Concrete does business in

3   California and is an employer engaged in an industry or activity affecting commerce within the

4   meaning of ERISA and Section 301 of the LMRA.  ECF No. 1 at 2, ¶ 3; John Hagan Declaration,

5   ECF No. 13 at 3, ¶ 8; 29 U.S.C. §§ 1002(5), 1003; 29 U.S.C. §§ 152(2), 142(1) & (3).

6       Plaintiffs and KMA Concrete are parties to a collective bargaining agreement that requires KMA

7   Concrete to submit monthly reports specifying the number of covered hours each employee worked

8   along with the corresponding contribution amounts by the 25th day of the month following the month

9   in which the hours were worked.  Hagan Declaration, ECF No. 13 at 3, ¶ 9, Ex. A-1 at 6, Ex. A-2 at

10  5-6, Ex. A-3 at 5.  If payments are late, then the collective bargaining agreement provides for a flat

11  $150 fee for each month that a payment is delinquent and 1.5% interest per month on the balance

12  due until the trust receives full payment.  *Id.* at ECF No. 13-9, Ex. D-3, at 1.  The collective

13  bargaining agreement also provides for costs of the lawsuit and reasonable attorney's fees incurred

14  by the trustees in an action to recover contributions or liquidated damages.  *Id.*, ECF No. 13-11, Ex.

15  F at 1-2 (Health and Welfare), 3 (Pension), 4 (Vacation-Holiday), 6 (Training & Retraining).  The

16  agreement requires KMA Concrete to submit to an audit if it does not make timely contributions.

17  *Id.*, ECF No. 13-8, Ex. D-2 at 15.  If the initial audit of KMA Concrete's payroll records does not

18  provide sufficient information to determine if a delinquency exists, the trust may "direct a further

19  audit of whatever records or accounts exist in order to determine the amount of the delinquency."

20  *Id.* and ECF No. 13-9, Ex. D-3 at 1.

21  **C.  Plaintiffs' Requested Judgment**

22      **1.  Contributions, interest, and liquidated damages for October 2009 – April 2010, June**

23  **2010 – October 2010**

24      For the months October 2009 to April 2010 and June 2010 to October 2010, KMA Concrete

25  made only partial payments on the amounts it reported.  Motion, ECF No. 11 at 4; Hagan

26  Declaration, ECF No. 13 at 4-16, ¶¶ 13-28.  Plaintiffs seek $80,014.42 in contributions, $14,567.34

27  in interest (1.5% per month on the outstanding balances), and $1,800 in liquidated damages (i.e. flat

28

1    fees).  *Id.*[2]  In total, Plaintiffs request $96,381.76 for this period.

2        **2.  Interest and liquidated damages for June 2008 – September 2009 and May 2010**

3        For the months June 2008 to September 2009 and May 2010, KMA Concrete made late

4    payments on the amounts it owes, but still owes interest and liquidated damages on the late

5    payments.  Motion, ECF No. 11 at 4; Hagan Declaration, ECF No. 13 at 16-31, ¶¶ 30-50.  In all,

6    Plaintiffs seek $11,387.44 in interest (1.5% on the delinquent balances), and $2,550 in liquidated

7    damages (i.e. flat fees).  In total, Plaintiffs request $13,937.44 for this period.

8        **3.  Injunction for an audit**

9        Plaintiffs seek a court order compelling KMA Construction to submit to an audit of its payroll

10   records and any other records necessary to determine the amount of any outstanding delinquencies.

11   Complaint, ECF No. 1 at 6; Hagan Declaration, ECF No. 13-8, Ex. D-2 at 15; ECF No. 13-9, Ex. D-

12   3 at 1.

13       **4.  Attorney's fees and costs**

14       Plaintiffs also seek reimbursement for $14,272.50 in attorney's fees and $816.25 in costs.

15   Motion, ECF No. 11 at 5.  Hourly rates for attorney time are $325 and for paralegal time are $125

16   and $145.  Ezekial Carder Declaration, ECF No. 12 at 2-5.

17                                **III.  ANALYSIS**

18   **A.  Subject Matter and Personal Jurisdiction**

19       Before entering default judgment, a court must determine whether it has subject matter

20   jurisdiction over the action and personal jurisdiction over the defendant.  *See In re Tuli*, 172 F.3d

21   707, 712 (9th Cir. 1999).

22       **1.  Subject Matter Jurisdiction**

23       Plaintiffs allege four claims but they essentially boil down to (a) breach of the collective

24   bargaining agreement, and therefore violations of ERISA, based on unpaid contributions to

25

26           [2] For various months, Plaintiffs indicate that due to a computer glitch that double counted
     some of the partial contribution payments, their charts show lower interest calculations for the
27   month immediately following the period of double counting.  *See, e.g.,* Hagan Declaration, ECF No.
     13 at 5, ¶ 14.  Plaintiffs agreed to seek the lower amounts specified in the charts rather than the
28   amounts to which they are entitled.  *See, e.g., id.*

1    employee benefits plans, *see* 29 U.S.C. § 185; 29 U.S.C. §§ 1132(a), (e-g), and 1145; and (b) for

2    breach of fiduciary duty, *see* 29 U.S.C. §§ 1002(21)(A), 1104, 1109.  They also seek a mandatory

3    injunction for an audit, *see* 29 U.S.C. § 1132(g)(2)(E).  *See* Complaint, ECF No. 1 at 4-6, ¶¶ 7-21.

4    The court has subject matter jurisdiction over these federal claims.  *See* 28 U.S.C. § 1331(a).

5        **2.  Personal Jurisdiction**

6        KMA Concrete is a California corporation, was served in California, and engaged in business

7    activities in the Northern District of California that are the subject of this lawsuit.  Summons, ECF

8    No. 4; Hagan Declaration, ECF No. 13 at 2, ¶ 3.  The court has personal jurisdiction.  *See, e.g.,*

9    *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir.

10   1986).

11   **B.  Default Judgment**

12       Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for –

13   and the court may grant – a default judgment against a defendant who has failed to plead or

14   otherwise defend an action.  *See Draper*, 792 F.2d at 925.  Default judgments generally are

15   disfavored because "cases should be decided on their merits whenever reasonably possible."  *Eitel v.*

16   *McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986).  The court must consider the following factors when

17   deciding whether to use its discretion to grant a motion for default judgment: (1) the possibility of

18   prejudice to the plaintiff; (2) the merits of a plaintiff's substantive claims; (3) the sufficiency of the

19   complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the

20   material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy

21   underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Id.* at 1471-72.

22   The factors here favor entry of default judgment against KMA Concrete.

23       **1.  Merits and sufficiency of complaint (prongs two and three of *Eitel* test)**

24       After entry of default, well-pleaded allegations in the complaint regarding liability and entry of

25   default are taken as true, except as to the amount of damages.  *See Fair Housing of Marin v. Combs*,

26   285 F.3d 899, 906 (9th Cir. 2002).  The court is not required to make detailed findings of fact.  *Id.*

27   Default judgment cannot exceed in amount what is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

28   ///

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    *a. ERISA claim*

2    29 U.S.C. § 1145 states that "every employer who is obligated to make contributions to a

3    multiemployer plan under the terms of the plan or a collectively bargained agreement shall, to the

4    extent not inconsistent with the law, make such contributions in accordance with the terms and

5    conditions of such a plan or such agreement."  Section 1145 creates a cause of action against

6    employers who do not make timely contributions that are required under a collective bargaining

7    agreement.  *See Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA,*

8    *Inc.*, 572 F.3d 771, 774-76 (9th Cir. 2009)*; Board of Trustees v. RBS Washington Blvd. LLC*, No. C

9    09-0660 WHA, 2010 WL 145097, at *2 (N.D. Cal. Jan. 8, 2010).  Plaintiffs here must prove the

10   following: (1) the trusts are multiemployer plans as defined by 29 U.S.C. § 1002(37); (2) the

11   collective bargaining agreement obligated KMA Concrete to make contributions; and (3) KMA

12   Concrete did not make the required contributions.  29 U.S.C. § 1145; *Board of Trustees of the Sheet*

13   *Metal Workers Health Care Plan of Northern California v. Gervasio Envtl. Sys.*, No. C 03-4858

14   WHA, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).

15   Plaintiffs' complaint contains sufficient facts establishing the elements of the claim: the trusts are

16   multiemployer benefit plans within the meeting of ERISA; the collective bargaining agreement

17   required KMA Concrete to make contributions to the plans; and KMA Concrete did not make

18   payments.  Plaintiffs meet prongs two and three of the *Eitel* test.  *See* ECF No. 1 (setting forth facts).

19   *b. 29 U.S.C. § 185 claim*

20   29 U.S.C. § 185 permits Plaintiffs to sue for breaches of a collective bargaining agreement.

21   Federal courts apply federal common law principles to determine the enforceability of contract

22   provisions like liquidated damages provisions.  *See Idaho Plumbers & Pipefitters Health & Welfare*

23   *Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 216 (9th Cir. 1989).  Plaintiffs' complaint

24   sufficiently alleges a contractual obligation to make contributions and a breach of that obligation.

25   *c. Breach of fiduciary duty under 29 U.S.C. § 1109*

26   To establish liability for breach of fiduciary duty under ERISA, Plaintiffs must show that (1) a

27   defendant is a fiduciary with respect to a plan or trust covered by ERISA and (2) it failed to

28   "discharge [its] duties with respect to a plan solely in the interests of the participants."  *See Batchelor*

1    *v. Oak Hill Medical Group*, 870 F.2d 1446, 1448 (9th Cir. 1989); 29 U.S.C. § 1104(a)(1).  An entity is

2    a fiduciary if (1) it is a "named fiduciary" in the plan instrument or (2) it exercises discretionary

3    control over a plan or management of its assets, rendering investment advice for fee, or having any

4    discretionary authority or responsibility over plan administration.  *See* 29 U.S.C. § 1002(21)(A); *see*

5    *also IT Corp. v. Gen. Am. Life Ins.*, 107 F.3d 1415, 1421 (9th Cir. 1997).  The definition of a fiduciary

6    under ERISA is broad and courts should interpret it liberally.  *See Arizona State Carpenters Pension*

7    *Trust Fund v. Citibank*, 125 F.3d. 715, 720 (9th Cir. 1997).  Whether an entity exercises discretionary

8    control over a plan or management of its assets is an inquiry that focuses on the "functional terms of

9    control and authority over the plan."  *See Mertens v. Hewitt Assoc.,* 508 U.S. 248, 262 (1993).  A

10   fiduciary who breaches its duties to the plan is liable for rectifying any losses that the plan suffers as

11   a result of the breach.  *See* 29 U.S.C. § 1109(a).

12        If a trust fund provides that monies owed to the fund are assets of the fund, then an employer's

13   debt to the fund is a trust "asset."  *See Trustees of Southern Cal. Pipe Trades Health & Welfare Trust*

14   *Fund v. Temecula Mech., Inc.*, 438 F. Supp. 1156, 1165, 1168-69 (C. D. Cal. 2006); *see* Hagan

15   Declaration, ECF No. 13-1, Ex. A at 6 (Health and Welfare); ECF No. 13-2, Ex. A-2 at 5 (Pension);

16   ECF No. 13-3, Ex. A-3 at 5 (Vacation-Holiday); ECF No. 13-4, Ex. A-4 at 4 (Training & Retraining)

17   (trust funds "consist of all Contributions required by the Collective Bargaining Agreement").

18        Plaintiffs' complaint contains sufficient facts alleging a breach of KMA Concrete's fiduciary

19   duties.  *See Board of Trustees of Laborers Health and Welfare Trust Fund for Northern California v.*

20   *Atoll Topoi Island, Inc.*, No. C 06-3059 SBA (WDB), 2007 WL 174409, at *3 (N.D. Cal. Jan. 22,

21   2007) (complaint's allegations sufficient to establish that CEO and President breached his fiduciary

22   responsibilities and was individually liable based on his failure to make contributions to trust

23   agreements as required by the collective bargaining agreement); *Temecula Mech., Inc.*, 438 F. Supp.

24   2d at 1168-69 (President and owner of a plumbing and pipefitting business was a fiduciary of an

25   ERISA plan because he was responsible for all or the majority of decisions regarding the

26   contributions to the trust fund).  The complaint alleges that KMA Concrete exercised authority and

27   control over the payment of the employee fringe benefit contributions that it was required to make to

28   the trust funds under the terms of the collective bargaining agreement.  Complaint, ECF No. 1 at 5, ¶

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

C 10-05831 LB
R&R RE DEFAULT JUDGMENT

1    17.  Therefore, Plaintiffs sufficiently pleaded this claim.

2        **2.  The Remaining *Eitel* Factors**

3        The remaining *Eitel* factors weigh in favor of granting default judgment.

4        *a.  Possibility of prejudice to plaintiff.*  If the motion is not granted, Plaintiffs have no recourse to

5    enforce the terms of the agreement requiring KMA Concrete to make plan contributions and pay

6    liquidated damages.

7        *b.  Possibility of dispute concerning a material fact.*  KMA Concrete never answered the

8    complaint, and so there is no information that there might be a disputed issue of material fact.  The

9    issues are straightforward: did KMA Concrete fail to make timely contributions required by the

10   agreement, and what are the interest and liquidated damages.  Given that the issues are easily

11   ascertainable, the possibility for substantial fact disputes seems unlikely.

12       *c.  Excusable Neglect.*  There is no suggestion of excusable neglect.

13       *d.  Small sum of money at stake in the action.*  When the money at stake in the litigation is

14   substantial or unreasonable, default judgment is discouraged.  *See Eitel*, 782 F.2d at 1472 (three-

15   million dollar judgment, considered in light of parties' dispute as to material facts, supported decision

16   not to enter summary judgment); *Tragni v. Southern Elec. Inc.*, No. C 09-32 JF, 2009 WL 3052635,

17   at *5 (N.D. Cal. Sept. 22, 2009); *Board of Trustees*, 2010 WL 145097 at *3 (*citing Eitel*, 782 F.2d at

18   1472).  Plaintiffs seek only $80,014.42 in delinquent contributions, reasonable costs of the litigation,

19   statutorily-required attorney's fees, liquidated damages, and interest.  The amounts in the

20   recommended judgment – set forth below – are reasonable and are required by either the collective

21   bargaining agreement or 29 U.S.C. § 1132(g).  This factor does not disfavor default judgment.

22       *e.  Strong policy in Federal Rules favoring decisions on merits*.  Despite the policy of favoring

23   decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case.

24   Fed. R. Civ. P. 55(b); *see RBS Washington Blvd, LLC*, 2010 WL 145097 at *4.

25   **C.  <u>Relief Sought</u>**

26       Under the collective bargaining agreement and the ERISA statute, when contributions are unpaid,

27   Plaintiffs may recover the following: (1) unpaid contributions; (2) interest on the unpaid

28   contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs; and (5) such other

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

C 10-05831 LB
R&R RE DEFAULT JUDGMENT

8

UNITED STATES DISTRICT COURT
For the Northern District of California

1  legal or equitable relief the court deems appropriate.  *See* Hagan Declaration, ECF No. 13-9, Ex. D-3,

2  at 1; *id.*, ECF No. 13-11, Ex. F at 1-2 (Health and Welfare), 3 (Pension), 4 (Vacation-Holiday), 6

3  (Training & Retraining); 29 U.S.C. § 1132(g)(2).

4      For the ERISA claim for damages under 29 U.S.C. § 1132(g)(2), Plaintiffs must prove their

5  entitlement to relief through written declarations and fulfill the following three requirements: (1) the

6  defendant must be delinquent in its contributions at the time the action is filed; (2) the district court

7  must enter judgment against the defendant; and (3) the plan must provide for the damages sought.

8  *Northwest Administrators, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996); *Idaho Plumbers*

9  *& Pipefitters*, 875 F.2d at 215.  If these requirements are met, an award of contributions, liquidated

10 damages, and reasonable attorney's fees and costs is mandatory.  *Northwest Administrators*, 104 F.3d

11 at 257; *RBS Washington Blvd.*, 2010 WL 145097 at *3.

12     For the breach of contract claim for damages, the district court applies federal contract law to

13 determine whether the liquidated damages are reasonable.  *See Idaho Plumbers,* 875 F.2d at 216.

14 Liquidated damages provisions must meet two conditions to be enforced: (1) the harm caused by the

15 breach of contract must be difficult or impossible to estimate; and (2) the amount of liquidated

16 damages must be a reasonable forecast of compensation for the harm caused.  *Id.* at 217; *United*

17 *Order of American Bricklayers & Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.*, 519

18 F.2d 332, 332 (9th Cir. 1975) (upholding liquidated damages provision in collective bargaining

19 agreement of 10 percent of unpaid contributions).

20     The allegations are as follows: (1) KMA Concrete failed to make complete and timely

21 contributions for October 2009 to April 2010 and June 2010 to October 2010, which were due on the

22 25th day of the month following the month in which the hours were worked (e.g. the October 2009

23 contribution was due by November 25, 2009); (2) KMA Concrete owes interest and liquidated

24 damages on late payments for June 2008 to September 2009 and May 2010; and (3) the agreements

25 provide for a $150 flat fee per delinquent month and 1.5% interest per month on any outstanding

26 balance.  Complaint, ECF No. 1 at 4, ¶ 8; Hagan Declaration, ECF No. 13-9, Ex. D-3 at 1.

27     Liquidated damages of up to 20 percent are permitted under 29 U.S.C. § 1132(g)(2).  Liquidated

28 damages and reasonable fees and costs are mandatory under ERISA for contributions that were

1  unpaid at the time the action was filed.  *See Northwest Administrators*, 104 F.3d at 257.  Liquidated

2  damages for late payments and reasonable fees and costs also are allowed and appropriate under the

3  terms of the collective bargaining and trust agreements.  *See Idaho Plumbers,* 875 F.2d at 214-18.

4      **1.  Contributions, interest, and liquidated damages for October 2009 – April 2010, June**

5  **2010 – October 2010**

6      Plaintiffs seek $80,014.42 in contributions, $14,567.34 in interest (1.5% on the outstanding

7  balances through April 2011), and $1,800 in liquidated damages (i.e. flat fees) for the amounts KMA

8  Concrete owes for the period of October 2009 to April 2010 and June 2010 to October 2010.  Hagan

9  Declaration, ECF No. 13 at 4-16, ¶¶ 13-28.  In total, Plaintiffs request $96,381.76 for this period.

10  Plaintiffs are entitled to this amount as the trusts are multiemployer plans, the collective bargaining

11  agreement obligated KMA Concrete to make contributions, and it did not make the required

12  contributions.  29 U.S.C. § 1145; *Northwest Administrators*, 104 F.3d at 257.

13      **2.  Interest and liquidated damages for June 2008 – September 2009 and May 2010**

14      Plaintiffs seek $11,387.44 in interest (1.5% on the delinquent balances) and $2,550 in liquidated

15  damages (i.e. flat fees) for unpaid interest and liquidated damages for June 2008 to September 2009

16  and May 2010.  Motion, ECF No. 11 at 4; Hagan Declaration, ECF No. 13 at 16-31, ¶¶ 30-50.  In

17  total, Plaintiffs request $13,937.44 for this period.

18      An award of these damages is mandatory and not discretionary if (1) the defendant is delinquent

19  at the time the action was filed, (2) the district court enters judgment against the defendant, and (3)

20  the plan provides for the damages sought.  *See Northwest Adm'rs, Inc.*, 104 F.3d at 257; *Idaho*

21  *Plumbers & Pipefitters*, 875 F.2d at 215.  Here, however, when Plaintiffs filed suit, KMA Concrete

22  was not delinquent for any of these months except September 2009.  As a result, Plaintiffs are not

23  entitled to Section 1132(g) damages with respect to the months other than September 2009.  Instead,

24  the court must apply federal contract law to determine whether interest and liquidated damages in the

25  amount Plaintiffs request are reasonable and warranted.  *See Idaho Plumbers and Pipefitters*, 875

26  F.2d at 214-18.

27          *a.  Liquidated Damages*

28      Liquidated damages are warranted where (1) the harm caused by the breach of contract is difficult

UNITED STATES DISTRICT COURT
For the Northern District of California

1  or impossible to decipher and (2) the amount of liquidated damages represents a reasonable forecast

2  of compensation for the harm caused.  *Id.*; *Thorleif Larsen and Son, Inc.*, 519 F.2d at 332 (upholding

3  a provision in a collective bargaining agreement for 10% liquidated damages for delinquent

4  contributions).

5      In this case, the agreement provides for a flat $150 fee for each month that a payment is

6  delinquent.  Hagan Declaration, ECF No. 13-9, Ex. D-3, at 1.  KMA Concrete did not make timely

7  payments from June 2008 to September 2009 and May 2010.  *Id.*, ECF No. 13 at 16-31, ¶¶ 30-50.

8  Where employers fail to make timely contributions under a collective bargaining agreement, the

9  anticipated damages include "the loss of the benefits of the use of the funds, increased administrative

10  costs resulting from collection efforts, the difficulties the trustees would have in forecasting receipts,

11  and possible loss of benefits to employees" as well as the "intangible damages to labor-management

12  harmony resulting from failure to comply with provisions which have been hammered out in

13  bargaining sessions."  *United Order of American Bricklayers*, 519 F.2d at 333, 337.  These damages

14  are inherently difficult or impossible to calculate.  *Id.*  Therefore, the first prong of the liquidated

15  damages analysis is fulfilled.

16      Next, the liquidated damages must be a reasonable estimate of the actual damages incurred by the

17  late payment of contributions.  The agreement specifically provides that the trust funds will assess a

18  $150 flat fee for all delinquent payments "to reflect the internal administrative costs incurred by the

19  trust administration in monitoring and tracking such late contributions."  Hagan Declaration, ECF

20  No. 13-9, Ex. D-3 at 1.  Thus, the $150 flat fee was part of the consideration that KMA Concrete

21  agreed to pay in return for the work of the Union employees.  *United States v. Carter*, 353 U.S. 210,

22  220 (1957) (upholding a 10% liquidated damages provision).  Furthermore, Section 1132(g) would

23  have expressly provided for liquidated damages up to 20% of the outstanding balance – a statutory

24  limit that, if applied, would yield far greater amounts than the $150 flat fee at issue here.[3]  Though the

25  Section 1132(g) remedies are mandatory only when the three requirements outlined above have been

27  [3] For example, applying a 20% interest rate on the delinquent contribution for June 2008 would entitle Plaintiffs to $8,152.61, or $8,002.61 more than the $150 flat fee they request. Likewise, for July 2008, a 20% interest rate would entitle Plaintiffs to $8,181.77, or $8,031.71 more than the $150 flat fee they request.

UNITED STATES DISTRICT COURT
For the Northern District of California

met, the reasonableness of the liquidated damages contemplated in Section 1132(g) does not turn on whether the defendant is delinquent at the time of the suit.  Because the liquidated damages provision was part of the bargain and Section 1132(g) specifically contemplates a liquidated damages award that exceeds the $150 flat fee, the court finds the liquidated damages reasonable.  *Atoll Topui Island, Inc.*, 2007 WL 174409, at *8 (approving a $150 flat fee on delinquent but paid contributions).

    *b. Interest*

Section 1132(g) also renders mandatory awards for interest on unpaid contributions.  *See* 29 U.S.C. § 1132(g)(2)(B).  However, because KMA was delinquent only for the September 2009 payment when Plaintiffs filed suit, they are entitled to the 1.5% interest rate for delinquencies on all other months only if the agreement provides for such damages.  *Atoll Topui Island*, 2007 WL 174409 at *9.  The agreement specifically states, "All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment."  Hagan Declaration, ECF No. 13-9, Ex. D-3, at 1.  KMA Concrete did not make timely payments for June 2008 to September 2009 and May 2010.  *Id.*, ECF No. 13 at 16-31, ¶¶ 30-50.  As a result, under the terms of the agreement, Plaintiffs are entitled to 1.5% interest per month on the outstanding balances (which equals a total of $11,387.44 in interest for this period).  *Atoll Topui Island*, 2007 WL 174409 at *9 (approving the same interest rate).

**3. Injunction for an audit**

The terms of the collective bargaining agreement determine KMA Concrete's responsibilities.  *See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990) (citing *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 568 (1985)).

Here, the master agreement gives trustees the authority to require KMA Concrete to submit to an audit of its payroll records upon written request from a Union or the Employer to the board of trustees.  Hagan Declaration, ECF No. 13-8, Ex. D-2 at 15.  If the initial audit does not provide "enough information to determine whether or not any delinquency exists, then the Board of Directors will direct a further audit of whatever records or accounts exist in order to determine the amount of the delinquency."  *Id.*; ECF No. 13-9, Ex. D-3 at 1.  The collective bargaining agreement also

1    requires KMA Concrete to submit to an audit at Plaintiffs' request.  Hagan Declaration, ECF No. 13

2    at 31, ¶ 53; *see also* ECF No. 13-8, Ex. D-2 at 15.

3         KMA Concrete has failed to make timely payments in accordance with the collective bargaining

4    agreement.  Thus, the court may compel access to the payroll records and KMA Concrete to submit

5    to an audit.  *Santa Monica Culinary Welfare Fund*, 920 F.2d at 1494.  The court recommends

6    ordering KMA Concrete to submit to an audit in accordance with the terms of the collective

7    bargaining agreement.  Because the master agreement limits the initial audit to KMA Concrete's

8    payroll records, Plaintiffs may only audit additional materials if the initial audit is insufficient to

9    determine the delinquency.  *See RBS Washington Blvd*, 2010 WL 145097 at *5 (applying a similar

10   restriction).

11        **4. Costs and attorney's fees**

12        Plaintiffs also ask for costs and attorney's fees as follows: (a) costs of $816.25 ($350 filing fee,

13   $35 for service, $431.25 for delivery of chambers copies); and (b) fees of $14,272.50, which is

14   broken into attorney time (38.25 hours at $325 and 4 hours of prospective time at $325) and paralegal

15   time (3.75 hours at $125 and .5 hours at $145).  Carder Declaration, ECF No. 12 at 2-6.[4]

16        The court finds the costs reasonable and recommends awarding them.

17        As to attorney's fees, an award of fees is mandatory for the October 2009 to April 2010 and June

18   2010 to October 2010 unpaid contributions and the September 2009 unpaid contribution because

19   contributions are unpaid, and the plan provides for reasonable fees and costs.  *See Northwest*

20   *Administrators*, 104 F.3d at 257.  Fees also are allowed and appropriate under the terms of the

21   collective bargaining trust agreement for all of the periods at issue.  Hagan Declaration, ECF No. 13-

22   11, Ex. F at 1-2 (Health and Welfare), 3 (Pension), 4 (Vacation-Holiday), 6 (Training & Retraining).

23        To determine a reasonable fee award in cases like this, federal courts use the lodestar method.

24

25

26        [4] Plaintiffs' counsel included a chart detailing the number of hours each attorney spent on
     this case.  Carder Declaration, ECF No. 12 at 2-4.  The chart indicates totals of 38.25 hours and
27   $12,431.25.  *Id.* at 4.  After adding the numbers in the chart, however, the court determined that
     Plaintiffs' counsel only spent a total of 35.25 hours and $11,456.25 on this case, which represents a
28   3 hour and $975 discrepancy.  The court will therefore use the accurate sums that are supported by
     the actual figures in the chart.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    *Grove v. Wells Fargo Financial Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010).  The court calculates a

2    "lodestar amount" by multiplying the number of hours counsel reasonably spent on the litigation by a

3    reasonable hourly rate.  *Id.*

4          *a.  Reasonable Hourly Rate*

5          A reasonable hourly rate is that prevailing in the community for similar work performed by

6    attorneys of comparable skill, experience, and reputation.  *Moreno v. City of Sacramento*, 534 F.3d

7    1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).  The

8    relevant community is "the forum in which the district court sits," which here is the Northern District

9    of California.  *Camacho*, 523 F.3d at 979.   The party requesting fees must produce satisfactory

10   evidence – in addition to the attorney's own affidavits or declarations – that the rates are in line with

11   community rates.  *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Jordan v. Multomah County*,

12   815 F.2d 1258, 1263 (9th Cir.1987).

13         According to Mr. Carder's declaration, Patricia Davis is a shareholder at Weinberg, Roger &

14   Rosenfeld (the firm).  Carder Declaration, ECF No. 12 at 4, ¶ 5.  She graduated from the University

15   of California at Davis School of Law in 1995 and was admitted to practice law in California that

16   same year.  *Id.*  Since 1996, Ms. Davis has worked with the firm on a variety of trust fund matters.

17   *Id.*  She bills at a rate of $325 per hour.  *Id.*

18         Mr. Carder is an associate at the firm.  *Id.* at ¶ 6.  He graduated from the Northwestern School of

19   Law at Lewis and Clark College and was admitted to the California Bar in 2000.  *Id.*  He worked for

20   the firm from 2000 to 2004 and then again beginning in February 2010.  *Id.*  He works on a variety of

21   trust fund matters and bills at a rate of $325 per hour.  *Id.*

22         Elanor Natwick is a paralegal at the firm.  *Id.* at 5, ¶ 8.  From 1980 to 2007, she worked as a

23   litigation case clerk in the paralegal department.  *Id.*  She holds a Bachelor of Arts in English from

24   Western Michigan University and a teaching credential.  *Id.*  Ms. Natwick earned her paralegal

25   certificate from the University of California at Berkeley in 2006 and in January 2007, the firm

26   promoted her to the position of paralegal.  *Id.*  She initially billed at $125 per hour, but her rate

27   increased to $145 per hour.  *Id.*

28         Judy Castillo is a senior paralegal at the firm who worked with the firm from 1997 to 2005 and

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    then returned in 2008. *Id.* at 6, ¶ 9. She earned her paralegal certificate from California State

2    University, Hayward in 1995. *Id.* Her hourly rate is $145. *Id.*

3       The court finds that the hourly rates here are reasonable. *Cf. Craigslist, Inc. v. Mesiab*, No. C

4    08-05064 CW (MEJ), 2010 WL 5300883, at *16-17 (N.D.Cal. Nov. 15, 2010) (using *Laffey* matrix to

5    calculate appropriate rates in the Northern District of California).

6       *b.  Reasonable Hours Expended*

7       Reasonable hours expended on a case are hours that are not "'excessive, redundant, or otherwise

8    unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v.*

9    *Eckerhart*, 461 U.S. 424, 434 (1983)). The party requesting fees must provide detailed time records

10   documenting the tasks completed and the time spent. *See Hensley*, 461 U.S. at 434; *McCown*, 565

11   F.3d at 1102; *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945-46 (9th Cir. 2007).

12       Here, the court finds 27.5 hours of attorney time totaling $8,937.50 and 4.25 hours of paralegal

13   time totaling $541.25 reasonable. The 7.75 attorney hours spent filing the first motion for default

14   judgment and the additional 4 hours of anticipated time spent at the hearing and on post-judgment

15   follow-up, however, are not reasonable. First, as noted in its May 27, 2011 order denying the original

16   motion for default judgment, the court spent considerable time identifying numerous deficiencies in

17   the motion and the supporting declarations. *See generally,* 5/27/11 Order, ECF No. 10. Absent these

18   deficiencies, a renewed motion for default judgment would have been unnecessary. *Id.* Moreover,

19   27.5 attorney hours and 4.25 paralegal hours are more than sufficient in a case that only required

20   Plaintiffs' counsel to draft a complaint and a motion for default judgment. *Board of Trustees of the*

21   *Sheet Metal Workers Health Care Plane of N. California v. Superhall Mechanical, Inc.*, No.

22   C–10–2212 EMC, 2011 WL 2600898, at *4 (N.D. Cal. June 30, 2011) (finding 13 hours reasonable

23   in a similar type of case); *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C–10–5568 EDL,

24   2011 WL 1496056, at *2 (N.D. Cal. Apr. 20, 2011) (finding 19.9 hours reasonable in a similar type

25   of case).

26       Lastly, 4 hours of anticipated time for the appearance at the short telephonic hearing and follow-

27   up work regarding the judgment are not reasonable. The court appreciates that Plaintiffs followed the

28   court's directions and cured the deficiencies, but once instructions were given and followed, the extra

UNITED STATES DISTRICT COURT
For the Northern District of California

1    four hours are excessive.  Therefore, the court recommends granting attorney's fees for all tasks not

2    associated with the first motion for default judgment or the additional 4 hours of anticipated time

3    spent at the telephonic hearing or on post-judgment follow-up.  In total, the court recommends

4    awarding Plaintiffs $9,478.75 in attorney's fees.

5                                    **V.  CONCLUSION**

6          The court **RECOMMENDS** that the district court **GRANT** Plaintiffs' motion for default

7    judgment.  The court further **RECOMMENDS** that the district court **AWARD** Plaintiffs $80,014.42

8    in delinquent contributions, $4,350 in liquidated damages, $25,954.78 in interest, $9,478.75 in

9    attorney's fees, and $816.25 in costs.  The court also **RECOMMENDS** issuing the following order

10   to KMA Construction: KMA Concrete is ordered to submit to an audit of its payroll records for the

11   period of January 1, 2007 to present so that Plaintiffs may determine the accurate amounts of

12   delinquencies.

13         A procedural issue is whether the district should retain jurisdiction to permit Plaintiffs to later

14   submit its estimate of the damages, attorney's fees, and costs to be assessed against KMA Concrete

15   for any unpaid contributions that Plaintiffs discover in the course of their audit.  Courts sometimes do

16   this, and the district court could allow Plaintiffs to file a second submission detailing the damages

17   sought from KMA Construction (apart from these amounts) for the months for which they find

18   delinquencies.  The district court could then determine whether the requested relief is appropriate.

19   *See Board of Trustees*, 2010 WL 145097 at *2, *6-*7 (applying this procedure); *Walters v. Silveria*,

20   No. C 07-1053 EMC, 2007 WL 2751217, at *5-*7 (N.D. Cal. Sept. 4, 2007).

21         Any party may file objections to this Report and Recommendation with the district judge within

22   fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil

23   L.R. 72-3.  Failure to file an objection may waive the right to review of the issue in the district court.

24         Plaintiffs are directed to serve a copy of this report and recommendation on KMA Concrete.

25         This disposes of ECF No. 11.

26         **IT IS SO ORDERED.**

27   Dated: August 12, 2011

28                                              _____
                                               LAUREL BEELER
                                               United States Magistrate Judge

C 10-05831 LB
R&R RE DEFAULT JUDGMENT
                                               16